FRED McC. NICHOLS ET AL. v. GALVESTON COUNTY.

No. 2755. Decided February 23, 1921.

(228 S. W., 547).

1.—Tax Assessor—Fees of Office—Drainage and Independent School Districts.

Amounts paid a county tax assessor for assessing property and taxes in drainage districts and independent school districts under the statutes requiring such services and providing compensation therefor, were not al-

lowances for *ex-officio* services within the meaning of Article 3893, Revised Statutes, and were subject to the general provisions of the Fee Bill, Articles 3881, 3883, 3889, which required such assessor in Galveston County to account to the County for three-fourths of all fees received by him in excess of $2500. (Pp. 53-57).

2.—Same.

The laws providing for assessment of taxes in drainage and independent school districts by the county assessor (Sec. 32, Ch. 118, Gen. Laws, 32d Leg., p. 256; Act of March 28, 1911; Rev. Stats., 1911, Art. 2862) make such assessment by him a part of the general duties of his office, the compensation for which becomes a part of the "fees of all kinds" for which he is required to account by Article 3881, Rev. Stats., 1911, and which include every compensation allowed him for performance of official duty not excepted by statute from the operation of the Fee Bill. (P. 55).

3.—Same—Official Bond.

It being the official duty of the assessor to assess the taxes for drainage and independent school districts, accounting for the fees therefor would be a part of the duties covered by his official bond, and his bondsmen would be liable for his failure therein. (P. 57).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Stewarts,* and *James B. & Chas. J. Stubbs,* for appellant.—As to the first question, such payments were for exofficio services, within the fair meaning of that term. Curtin v. Harris County, 203 S. W., 453; Cooper v. Johnson County, 212 S. W., 528; Ledbetter v. Dallas County, 111 S. W., 193; Anderson County v. Hopkins, 187 S. W., 1019.

Nichols received his compensation by vouchers issued by the Drainage Commissioners on the orders of the Galveston County Commissioners and payable out of the drainage district funds exclusively, which funds do not belong to Galveston County. It seems a strange legal doctrine that Galveston County can maintain a suit for the recovery of money that neither belongs to it nor to which such County has even a potential claim, and a still stranger proposition of law that the sureties on the assessor's bond are bound to make good to the county moneys that do not belong and never did belong to the county.

However, if assessing district taxes were not *ex officio* services, still the statute requiring county officers to pay back three-fourths of fees in excess of certain sums is not applicable, because Sec. 17 of the final title, Rev. Stats., 1911, provides that no law passed by the 32nd Legislature, shall be in any way affected by the repealing clause of the Revised Statutes. The 32nd Legislature passed this Drainage District Act. The effect of the repealing clause of the drainage act, was to repeal, so far as the compensation of the assessor was concerned, any act including the general fee bill, that

would take from him any part of the proper compensation allowed him by the Commissioners. It could have no other fair and reasonable construction.

Referring to the second certified question, we affirm that the payments made Nichols for assessing district taxes were voluntary in the nature of final settlements, and are not recoverable against him or his sureties, whether or not the County Board had or had not the authority to pay him the sums sued for. In support of this we ask the court to read the following cases: Cooper v. Johnson Co., 212 S. W., 528; Jeff Davis Co. v. Davis, 192 S. W., 291; Slaughter v. Knight, 184 S. W., 539.

*Charles H. Theobald,* County Attorney, and *Marvin J. Levy,* Assistant (*E. A. Wilson* and *Walter J. Crawford,* of counsel) for appellee.

Fees allowed the tax assessor and collected by him for assessing taxes for drainage districts are part of the general revenue of the office of tax assessor and are "fees of all kinds" which must be accounted for under the general fee bill (R. S. Art. 3881, et seq.), such fees not having been excepted therefrom specially, and are not *ex officio* fees excepted therefrom, and they are part of the general revenues of the office which the official bond covers. On question of fees of office: R. S. Arts. 3871, 3881, 3883, 3893, 3895, 3896, 3888, 3889; Acts 32nd Legislature (1911, Chap. 118, Sec. 32, p. 256); Ellis Co. v. Thompson, 64 S. W., 927; Ellis Co. v. Thompson, 66 S. W., 48; Tarrant Co. v. Butler, 80 S. W., 656. Showing history of legislation on the subject of fees and showing the construction the legislature placed upon Art. 3893; Acts 1879, Ch. 81 p. 91; Art. 2450, R. S. 1897; Art. 3852, R. S. 1911; Collingsworth County v. Myers, 35 S. W., 414; City of Belton v. Head, 137 S. W., 419; Busch & Co. v. Caufield, 135 S. W., 246; Act Aug. 23, 1876, p. 287, secs. 8, 9; Acts 1881, p. 99; Act Mar. 9, 1875. p. 70; Art. 2459, R. S. 1879; Art. 2462, R. S. 1879; Arts. 3858, 3862, 3866, R. S. 1911; Acts 1905, p. 91; Chapter 5, Title 45, R. S. 1897; Acts 1897, S. S. p. 5, et seq; Art. 2495h, R. S. 1897; Art. 3893, R. S. 1911; Navarro County v. Howard, 129 S. W., 857.

The ex-officio allowance excepted by article 3893 from the operation of the general fee bill, may or may not be allowed within the discretion of the court, while the compensations provided for the tax assessor for assessing drainage and independent school districts the Commissioners' Court are compelled to allow under the law.

There is no question of voluntary or over-payment, or of refund of fees to the districts in this case. If they were fees of office he was entitled to be paid them, and it was the duty of the

commissioners to pay them. They were not voluntarily paid him, but were paid him because the law directed that they be paid him. It is the excess created by their collection which we are claiming in this case.

MR. JUSTICE PIERSON delivered the opinion of the court.

Question certified from the Court of Civil Appeals of First Supreme Judicial District of Texas, in an appeal from the District Court of Galveston County.

The certificate of the Honorable Court of Civil Appeals for the First District presents in substance the following facts:

The suit was brought by Galveston County against Fred McC. Nichols and the sureties on his official bond in the District Court of Galveston County, to recover of said Nichols the sum of $2101.91, less one-fourth, being $1576.45.

Fred McC. Nichols was the duly elected and qualified tax assessor for the County of Galveston during the year ending December 1, 1912. As such assessor, as required by law, he assessed taxes for Galveston County Drainage District No. 2 for the years 1911 and 1912; for Galveston County Drainage District No. 1 for 1911; and also for Galveston County School Districts for 1912. For said services he was paid by the County of Galveston during 1912 amounts aggregating $2101.91. For assessing the taxes for the Galveston County drainage districts, he received compensation as evidenced by drainage district vouchers; and for assessing the taxes in Galveston County school districts a warrant upon the General Fund of Galveston County. During the year 1912 he received fees in excess of the $2500.00 maximum allowed him by law, and reported and accounted to plaintiff for three-fourths of all the excess fees, except the amounts named herein, which he held and claimed as *ex officio* salary or compensation.

The first question certified by the Court of Civil Appeals is:

"Were the amounts paid Nichols for assessing the taxes for drainage and school districts, under the statutes relating to such districts, compensation for *ex officio* services in the purview of Art. 3893, Revised Statutes of 1911, and therefore not subject to the general provisions of the statute known as the "fee bill," which requires county assessors to account to the county for three-fourths of all fees received by them in excess of $2500.00?"

The second question is:

"If the first question is answered in the negative, we ask: Is the county barred of recovery of the amounts sued for against the defendant sureties upon the ground that said amounts were voluntary payments to Nichols?"

We answer the first question "No."

Article 3881, Revised Civil Statutes of 1911, provides:

"Hereafter, the maxium amount of fees of all kinds that may be retained by any officer mentioned in this section (article) as compensation for services shall be as follows:"

Then Article 3883, which would include Galveston County, fixes the compensation for "assessors of taxes, an amount not exceeding twenty-five hundred dollars per annum; and in addition thereto one-fourth of the excess of the fees collected by the officers respectively."

Article 3889 provides that after the officer has received his maximum and one-fourth of the excess, after paying for the services of deputies, assistants, etc., the remainder shall be paid to the county treasurer.

Article 3893, which the appellant Nichols invokes to support his contention, as set out in the first certified question, reads as follows:

"It is not intended by this chapter that the commissioners' court shall be debarred from allowing compensation for *ex officio* services to county officials not to be included in estimating the maximum provided for in this chapter, when, in their judgment, such compensation is necessary; provided, such compensation for *ex officio* services shall not exceed the amounts now allowed under the law for *ex officio* services; provided, further, the fees allowed by law to district and county clerks, county attorneys and tax collectors in suits to collect taxes shall be in addition to the maximum salaries fixed by this chapter."

Section 32, Chapter 118, of the General Laws of the Thirty-second Legislature, which authorizes the establishment of drainage districts, reads as follows:

"The county commissioners court (shall) provide all necessary additional books for the uses of the assessor and collector of taxes and the county clerk of such drainage district, and charge the cost of same to the said drainage district. It shall be the duty of the county tax assessor, when ordered to do so by the county commissioners court, to assess all property within such drainage districts, and list the same for taxation in the books or rolls furnished him by said commissioners court for that purpose, and return said books or rolls at the same time when he returns the other books or rolls of the State and county taxes for correction and approval; and if the said commissioners court shall find said books or rolls correct, they shall approve the same and order the county clerk to issue a warrant against the county treasurer in favor of said tax assessor to be paid from the funds of said drainage district. The tax assessor shall receive for said services such compensation as the said county commissioners court shall deem proper to compensate him for the amount of work done. Should the tax assessor fail or refuse to comply with the order of the commissioners court requiring him to assess and list

for taxation all the property in such drainage districts as herein provided, he shall be suspended from the further discharge of his duties by the commissioners court of his county, and he shall be removed from office in the mode prescribed by the law for the removal of any county officers.''

Article 2862, Revised Statutes 1911, relating to assessing taxes for school districts, reads as follows:

''When a majority of the board of trustees of an independent school district prefer to have the taxes of their district assessed and collected by the county assessor and collector, same shall be assessed and collected by said county officers, and turned over to the treasurer of the independent school district for which such taxes have been collected; provided, that the property of such districts having their taxes assessed and collected by the county assessor and collector, shall not be assessed at a greater value than that assessed for county and state purposes; provided, further, that when the county assessor and county collector are required to assess and collect the taxes of independent school districts, they shall, respectively, receive one per cent for assessing and collecting same.''

It will be seen from the last two Articles of the Statutes quoted that it is the duty of the tax assessor, not only to assess State and County taxes, but also to assess taxes for drainage and school districts, and he may receive therefor the compensation provided therein.

Article 3881, providing that ''Hereafter the maximum amount of *fees of all kinds* that may be retained by any officer mentioned in this section (article) as compensation for services shall be as follows:'' was meant for a limitation and positive restriction upon the maximum amount of fees an officer may receive; and all compensation, commissions and fees provided by the Legislature for assessing taxes are to be considered ''fees of all kinds'' and to be accounted for in determining the salary the tax assessor is to receive, unless specified otherwise by the Legislature, or unless specially provided and contracted for by the commissioners' court under authority of law.

In the case of Ellis County v. Thompson, 95 Texas, 26, 66 S. W. R., 49, Judge Brown, in discussing this Article as it relates to county clerks, used the following language:

''Article 2495c, Sayles' Civ. St. [now Art. 3881 R. S. 1911], reads thus: 'The maximum amount of fees of all kinds that may be retained by any officer mentioned in this article as compensation for services shall be as follows.' The phrase 'fees of all kinds' embraces every kind of compensation allowed by law to a clerk of the county court, unless excepted by some provision of the statute.''

He also mentions certain exceptions stated in the Statutes, and concludes by saying that "the exceptions are so definite that by implication all fees not mentioned in the exceptions are excluded therefrom, and thereby included within the requirement of the act."

In the case of Ward v. Harris County, 209 S. W. R., 793, in which case a writ of error was denied by this Court, Chief Justice Pleasants says:

"We cannot agree with appellants in their contention that the commissions received by the county judge for the sale of Harris county drainage district bonds are not included in the term 'fees of all kinds,' as that term is used in article 3881, Vernon's Sayles' Civil Statutes, fixing the maximum compensation allowed county officers. On the contrary, we think the decisions of our Supreme Court and Courts of Civil Appeals settle this question adversely to appellants' contention. The general purpose of the maximum fee' bill was to limit the compensation received by the officers named therein for the performance of their official duties, and the term 'fees of all kinds,' as used in that act, has been expressly held to include commissions allowed by law for the performance of official duty, the commissions so allowed not being excepted from the maximum fee bill by any provision of the statute."

After the statutes were enacted providing for drainage districts and independent school districts, and that when ordered to do so by the properly constituted authority, the county assessor of taxes shall assess these taxes, the assessment of such taxes by him became the usual and general duties of his office; and the performance of these duties by him is made mandatory.

Section 32, Chapter 118, of the General Laws of the Thirty-second Legislature provides that it shall be the duty of the county tax assessor, when ordered by the commissioners' court, to assess property within drainage districts; to list same on the rolls, and return the rolls at the same time he returns other books and rolls of the state and county taxes; and if found correct the county commissioners shall approve same and order the county clerk to issue warrant against the county treasurer in favor of said tax assessor, to be paid from the funds of said drainage district; that said tax assessor shall receive such compensation as the said county commissioners' court shall deem proper to compensate him for the amount of work done. It then provides that should the assessor fail or refuse to comply with the order of the commissioners' court, he shall be suspended by the commissioner' court and shall be removed from office.

The statute makes it the duty of the assessor to assess the drainage' district taxes, and to return the rolls. It makes it the duty of the commissioners' court, upon approving the rolls, to order the county clerk to issue warrant against the county treasurer, to be charged

against the funds of the drainage district. It provides for removal from office of the tax assessor, should he fail or refuse to perform these duties.

These duties are fixed by statute. Article 2862, relating to assessment of taxes for independent school districts, under the conditions mentioned therein, likewise requires the tax assessor to assess said taxes, and provides that he receive one per cent. for assessing same.

The purpose of Article 3893 was to warrant an additional compensation for *ex officio* services to county officials, when in the judgment of the commissioners' court such additional compensation is necessary. It does not appear that the additional compensation to the assessor was necessary, or that it was allowed to said officer by the commissioners' court as *ex officio* compensation. True, it approved the assessor's rolls, ordered the county clerk to draw a warrant in favor of the assessor for the fees provided by the statute, in compliance with the statute requiring it to do so.

Because Article 3893 authorizes the commissioners' court to grant *ex officio* compensation when in its judgment it is necessary, it does not follow that fees collected by an officer in the due course of his duties, under the orders of the commissioners' court as directed by the statute, become *ex officio*.

Second Question. Having answered the first question in the negative, it becomes necessary for us to answer the second question.

The second question is:

"Is the county barred of recovery of the amounts sued for against the defendant sureties upon the ground that said amounts were voluntary payments to Nichols?"

We answer the second question "No" also.

Our answer to the first question in effect answers the second.

If the fees or compensation for assessing the drainage districts and the independent school district taxes are, under the law, "fees of all kinds," then it became the duty of the assessor not only to assess the taxes, but also to make the proper accounting for them. Therefore, it would be a part of his duties covered and protected by his bond, and his bondsmen would be liable for a failure on his part to properly account for them.